The case for argument this morning is Miller Coors v. Anheuser-Busch Mr. Schott. Thank you, Judge. May it please the Court. At the preliminary injunction hearing in this case, Judge Connolly said, if this was a case about intent, I think you would probably win. I think the intent, the hope... Mr. Schott, before we start talking about the merits, I have two questions about jurisdiction. One about our jurisdiction, and one about the district courts. The question about our jurisdiction is, is there a judgment from which you have appealed? Yes. I could not find a preliminary injunction in the record. What have I overlooked? And certainly there's none attached to your brief as an appendix. I believe the order that is attached to our appendix, the May 24th order... What you have is an opinion of the district court. We have said over and over until blue in the face that a statement in an opinion is not a judgment. It does not qualify as an injunction. It binds no one. Is there an injunction in this case? I believe there is, Your Honor. And why is it not in your appendix? I don't know the answer to that, Your Honor. I thought it was the last page of the order. The district judge plainly thought that his opinion is the same thing as an injunction. We have held otherwise. Mr. Schott, is there any separate document setting forth the preliminary injunction order other than what's at the end of the district court's opinion that says order? I am not aware of a separate document. There is the last page of the opinion that is labeled order. Well, we have taken in recent years to remanding to give the district judge one final opportunity to comply with Rule of Civil Procedure 65D and then proceeded with the appeal from there. Maybe we should do that, but I'm very surprised that with sophisticated counsel on both sides, nobody bothered to point out to the district court the blatant noncompliance with Rule 65 and with this court's jurisprudence. It's very disappointing. The second question is, did the district court have subject matter jurisdiction to do what it has been doing, at your request apparently, in the months since it entered the preliminary injunction? There's a pretty old doctrine that only one court at a time has jurisdiction over a case. District court entered a preliminary injunction. You appealed. We get jurisdiction. The district court has now twice modified this preliminary injunction while it was on appeal. Did the district court have subject matter jurisdiction to do that? I believe it did, and to be clear, what the district court did is we asked in our initial request for injunctive relief for several types of injunctive relief relating to different types of advertisements that were being used by Anheuser-Busch. At the conclusion of the preliminary injunction hearing, the judge said he wanted additional briefing with respect to one of those issues, which was respect to the packaging. So the May 24th order... I'm not really interested in what the district court thought. District judges don't have power to reserve jurisdiction once an appeal is taken. They can say that all they want, but there's just a rule that once an appeal is taken, jurisdiction moves to the court of appeals. Now, is there any exception to that rule for preliminary injunctions? I think 28 U.S.C. 1292 gives this court jurisdiction to... I'm asking about the district court's jurisdiction here in connection with the rule that only one court at a time has jurisdiction. There is a rule. It's Rule of Civil Procedure 62.1 that tells district judges what they have to do if they want to modify a judgment that is already on appeal. Did anybody bring Rule 62.1 to the district court's attention? The question is a yes or no answer. No, and the reason for that is that the modification doesn't relate to the order that's up on appeal. The district court expressly said he was modifying the order. Now, the fact that there wasn't any order, the fact that there was no preliminary injunction in the first place, might bear on that. And the thing he classified as a modification is yet again the last page of an opinion, rather than anything complying with Rule 65. But it seems to us that we've got pervasive problems here with both Rule 65 and Rule 62.1. The modification in the second order doesn't deal with any of the relief that was requested? That's completely irrelevant to this doctrine, counsel. It doesn't matter if the district court thinks he is, for example, having awarded some aspect of damages in an appeal clause. The district court then says, oops, I forgot to award damages for some other total category. No, district judge can't do that. It's just black letter law that the district judge can't do that. Now, I'm asking if you think there's some rule that preliminary injunctions are different. I've done a little research about this. They are in one court of appeals, but the majority rule seems to be that preliminary injunctions are no different from money judgments for this purpose. The one case that I've read from this court that seemed to address this issue most precisely is the Albert v. TransUnion case. And I don't have the citation to that in my notes. But that was a case in which the court dealt with a situation where there was an interlocutory appeal of a preliminary injunction, where several types of relief or several, in essence, separate injunctions were requested. And the court acted with respect to some and didn't act with respect to others. And the court observed in a situation like that, the court would have jurisdiction over that first appeal because it finally resolved the issues that were discussed there, the injunctive relief discussed there. I want to be clear. I'm not talking here about this court's jurisdiction. I'm talking about the district court's. It's clear from what you've said and the briefs that neither side has given these problems any thought. We're going to ask for supplemental memoranda from the party, so I won't consume any more of your time about this. But I'll be asking the same questions about Mr. Bennett. And then perhaps we will have to put this case, I hate to say it, on ice while we get jurisdictional issues tracked down. Thank you, Your Honor. If I could just add a couple of comments on that point, it would be helpful if you all would address Section 3921.2 of Wright and Miller, which talks about this in some detail. And at least as I look at this problem, I hope you all will address pragmatic kinds of issues that arise in fast-moving injunctive litigation, where certainly there may be cases where a right to relief against one defendant among several or one form of relief is very clear and especially urgent. Others may require some further inquiry, further hearings. I would think that a district court ought at least to have the power to manage that in a sensible way. And I would expect this court to be able to keep track of moving parts. And if I could just add also, if you could address, there's some case law out there, and we said last year in the Eli Lilly case, that district courts can modify preliminary injunctions that are on appeal if the modification is an attempt to maintain the status quo or a clarification. Would this case fall within that, what appears to be a narrow exception? Thank you. We will address all those issues. And then one other question. Could the district court here have entered the September order, not the modification to the date, but the original September 4th order? Could the district court have entered a separate preliminary injunction order,  Thank you. We will address all those issues in our supplemental briefing. Thank you. And if you want to address that issue, you should pay attention to Adams against Chicago, which is 135 at 3rd, 1150. Thank you, Your Honor. As I was saying, at the preliminary injunction hearing, Judge Conley said, if this was a case about intent, I think you would probably win. I think the intent, the hope, is that consumers will be misled. But as you know, the Seventh Circuit hasn't adopted an intent element. That's why we are here today, to ask this court to adopt an intent element. Specifically, we are asking you to adopt a rebuttal presumption that because we made a showing that Anheuser-Busch intended to mislead consumers and give them a false message about corn syrup being in our beer, the burden should shift to Anheuser-Busch to attempt to prove that their attempt failed and consumers were, in fact, not misled. Why adopt a rebuttable presumption as opposed to just saying, this is one piece of evidence for the district court to consider? I think that the policy reasons why courts adopt rebuttable presumptions in many instances apply here, which are primarily ease of access to proof and basic fairness. The policy consideration that the Supreme Court has picked up on is superior access to the proof. What's the argument here that Anheuser-Busch somehow has superior access to the proof that you have put in your brief? In an ad campaign like this, and as shown in the district court, we put in evidence that Anheuser-Busch statements to the fact that this was all based on consumer research. They had done a great deal of consumer research beforehand to develop these ads to figure out what the message should be. That's exactly the kind of stuff that shows how will consumers react to different things, what information will they be gleaning from an ad, and what impressions will they get from that. So that's exactly the kind of superior information that they have. But it's not superior information. It's do they have superior access to the information. What's your argument that they would somehow have superior access to the proof? You certainly have it and submitted it to the court. We did at the preliminary injunction stage. Of course, all we had was their statements. Through the course of discovery, we'll get some of that other evidence that I've mentioned. But particularly at a preliminary injunction stage, when you need to act quickly, it's very difficult to get access to that information. That's all through discovery. So would the presumption then just be for purposes of the preliminary injunction, not for summary judgment? I see no reason to have presumption only prevail or only be adopted for preliminary injunctions. I think it ought to apply in both the preliminary injunction stage and the stage. And, again, I go back to the fairness doctrine. As the Ninth Circuit put it in the U-Haul case, he who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he succeeded in deceiving. So I think that's the other policy reason why this rebuttable presumption ought to be adopted by this court. Scott, what does the record tell us about whether the starch source in beer affects the taste? I hesitate only because I'm trying to remember what's in the record and what's been developed in discovery. Well, look, the New York Times record, the New York Times letter in response to the Super Bowl ads, from Miller, credits corn for the better taste. I believe what the affidavit or the declaration that we submitted stated was that corn syrup, the effect on the taste is it doesn't mask any other taste. In other words, it doesn't contribute. There are no flavonoids from corn syrup that appear in the beer, but it allows the taste from other sources of flavor to not be masked by some other adjunct that's used in the brewing process to provide sugar in the fermentation process. How does that compare to rice? I believe rice plays essentially the same function. No flavonoids? I'm not an expert on Anheuser-Busch, but that's my understanding, that, again, they play the same function, source of sugar. Because what concerns me is you've got Miller crediting corn for the good taste of its beer. And you've been listing this as an ingredient in Miller Lite for many years, and I guess I'm having a little trouble understanding why Anheuser-Busch can't say what you've been saying but with a sneer. The difference is in the context. When we've listed it in our tables of ingredients along with things like yeast, which I think most people understand yeast doesn't appear in the final beer, but we list it because it's something that's used in the process. We have used the same phrases that they've used, but in a way that does not give the misleading impression that the corn syrup is in the beer, that it's in the final product. And so that's the difference. I'm puzzled by that. The beer says that corn syrup is an ingredient. And at least as a consumer, my inference is that anything listed on the package as an ingredient is in the product. I share my colleague's question about why when Miller Coors represents to consumers, at least implicitly, that corn syrup is in the product, why a commercial rival can't do the same. And, again, I think it's all a question of the context. Again, listing, for example, yeast and corn syrup, I believe most consumers understand that yeast does not end up in the final product. Maybe I'm odd, but I tend to think that things that are listed as ingredients in a product are in a product. Why else are they listed as ingredients? Because, I mean, that specific decision was made as a result of a lot of public pressure, public inquiry into what is used in your process. And so in the interest of being open about that, Miller Coors made the decision, we will tell people what's used in our process. If I open a package of breakfast cereal and look at the ingredients, I don't expect to see a list of everything that was used in making the cereal. I expect to see a list of what's in the cereal. So you're saying consumers would know that the function that list serves in cornflakes is not being served in beer. How do they know that? Well, again, I think they know it in part from context of where it is listed, and it's listed with, for example, yeast. And, again, I think most people understand that's not in the final product. I'm not sure they understand that because the package says it's an ingredient. And even so far as I know, even if you try to filter out all the yeast, you won't succeed. And similarly, yeast will not ever convert 100% of the sugar source. It seems to me inevitable that yeast are in this product. It's not avoidable. The number of bits of yeast that are used is in how many hundred billions in a glass of beer? They can't all be filtered out. I think the question here is not the question here is did the Anheuser-Busch statements mislead consumers about the presence of corn syrup in our beer. The evidence before the district court was undisputed that there is no corn syrup in our beer. We submitted a proposed finding of fact backed by an expert declaration on that. There was no contrary evidence submitted by the Anheuser-Busch. They have not cross-appealed on any of these issues. Well, actually, they have now filed two cross-appeals. That's the sore point that we began this argument with. The district court has now purported to, though not actually, enjoined them from saying that corn syrup is in beer, and they've appealed. What the second district court order did was extend the injunction to packaging. I'd like to address briefly, I know I haven't much time left, the second question that was raised with respect to this presumption, which is whether there ought to be an egregious conduct trigger as well as the deliberate attempt to deceive trigger. I think in our briefing we did a pretty good job of explaining that only one circuit has adopted that egregious conduct second trigger. That's the Third Circuit. I think if you look at two things there, number one, I'm not sure what egregious conduct adds to the test. It's not defined by the Third Circuit. It's not defined in Anheuser-Busch's brief. It's not defined by any of the cases we've seen. For example, under the Patent Act, egregious conduct cases say, well, that's willful conduct or intentional conduct. I think it's somewhat circular in that event. I also just think whatever the test is, however this court defines it, it would be bad policy for the court to say that somebody spending tens of millions of dollars in a deliberate attempt to deceive consumers about something does not rise to the level of egregious conduct that ought to have this burden-shifting presumption take place. Thank you. I reserve my remaining time for rebuttal. Mr. Schott, you don't have any remaining time. On the other hand, we've consumed a lot of your time. I will give you three minutes extra for rebuttal. Thank you. Thank you very much. Mr. Bennett. Thank you, Your Honors, and may it please the court. I assume we'll start with questions. I think we need to start with jurisdiction, Mr. Bennett. The first point is that we agree that there's no separate preliminary injunction set out and that the basis is the same. Is that separate order the second time or the third? No, it's also all in the context of this case. Did anybody bring this to the district court's attention? No. How many times do we have to say that district judges have to comply with Rule 65? I just find it shocking that sophisticated lawyers on both sides ignore Rule 65, don't remind the district court. At a minimum, this is going to take the time for us to put this case on hold and get the district court to comply. Understood. This should be done before you appeal, before a case comes to the Court of Appeals, not afterwards. And on the second, the moving injunctions, the district court cited Rule 62D in the first footnote of the opinion as the basis of his authority to modify, and that's the only discussion of that issue. And that's the one that would allow maintaining the status quo, correct? That's what I believe. That limitation is not in the text of the rule, however. Right. I'm a little lost. He cited what? 62D of the Federal Rules of Civil Procedure. The problem is I'm not asking about Rule 62D, I'm asking about Rule 62.1. The indicative ruling and ability to modify? Yeah. Did anybody draw Rule 62.1 to the courts? Nobody has filed asking him how he would rule if this court were to remand it. And he cited the rule that we indicated that either may or may not, and what's covered in our supplemental briefing, allow an expansion, which this clearly was. Mr. Bennett, did Anheuser-Busch have any doubt about what it was being ordered not to do on page 49 of the opinion, the part that says it is ordered that? We understood the ruling and have complied with it. Presumed that it would be enforceable by contempt and so on, if there were a violation? I don't know that we got into whether there would be contempt or not because we were complying with it. We understood what the judge intended us to do and we followed it. And we've also followed the second one under the same circumstances. Is it your position, from what you said a moment ago, that 62.1 doesn't apply because the court thought it had the authority to grant in the first place? No, I think we'd have to cover this in our supplemental briefing. 62.1, I'm answering based on my experience with having used that in the past, so I'm not able to say what our position will be in our briefing. We'll look forward to your supplement on it. Thank you very much, Your Honor. Now to turn to the issues presented under the underlying law as a preview of when perhaps we'll be in front of the court in a better posture in the future. It is clear that the district court made certain findings in this case. And the first is that the Super Bowl ads are true. The second is that they are neutral. And the third is that there were no implied messages suggesting that there was somehow beer in the final product, although we do believe that corn syrup in the final product and we do have evidence that shows that it is. Those findings are reviewed for clear error. I'm sorry, you say you intend to present evidence that corn syrup is in the final product? We have now presented evidence in the district court in what we would hope will be in the record on our next appeal. You can find it at Docket 146, pages 24 through 27, where we have explained the evidence that we have, that Miller Coors is marked as highly confidential and it's under seal. But we will present that and we believe it strongly confirms what Judge Easterbrook said, which is that there are residual sugars that are not eaten out of the beer by the yeast and remain in the final product. And we, of course, agree that at least since 2015, Miller Coors has stated that corn syrup is an ingredient, a main ingredient, one of five that they list. And I don't believe there's ever been a case under the Lanham Act that says that a competitor can't say what the plaintiff is saying. Was there any evidence presented at the preliminary injunction hearing along the lines that Mr. Schott was talking about, that because it says it's an ingredient, does it mean it's in the final product? Because that seems counterintuitive to me. Yes, and they tried to present a survey that says that that's what that means, and we would think that that would take us right to Mead-Johnson. It's an interesting question in the survey. The Mead-Johnson opinion, which two members of the panel I'm sure know very well, said, we don't do surveys to determine the meaning of words. And this survey question said at the outset, made with has many meanings. They actually used the word meaning, which Mead-Johnson would say you shouldn't be doing. And so what they attempted to prove up was that if you tell consumers that our Super Bowl commercials words have more than one meaning, and then you only give them one answer that actually has more than one meaning, which was the third answer, which is both and both, you get some answers that we think contradict the plain meaning and, as Mead-Johnson says, contradict verifiably, objectively true statements, which our statements clearly are. And so there is no evidence that would be proper under Mead-Johnson that would suggest that brewed with means something different. But my question was a little bit different, and I know those surveys went to the language that Anheuser-Busch used in its ads. Mr. Schott made a representation or said in response to Judge Easterbrook's questions about what the ingredients are, that the ingredients don't mean just because it's labeled as an ingredient, it doesn't mean it's not in the final product. Was there anything to support that statement? There is no evidence that Miller Coors ever said that at any time before litigation. They did submit an affidavit from a scientist on corn syrup who I believe the most that you could say says that corn syrup, as it exists before it's brewed, doesn't exist in the beer, although residual sugars do, is the closest that they ever came to that. And our view is that if it's an ingredient and it's significant enough to consumers that you've listed it for five years, and if it's not possible for the residual sugars to be removed, there is not competent evidence that would allow such a finding to have been made. And here, when we have really two things that have happened here is that Anheuser-Busch did an advertisement that used their own website and actually cited to it. If you watch the commercials which are in the record, it says based on Miller Coors' website, and it has a trailer on it. And then after we issued the ad, the next day they came out in the New York Times and confirmed it. And it's a remarkable statement. They say at the very first line of the New York Times advertisement that, in fact, our commercials went out of its way and very extensively to say that it was brewed with corn syrup. And then they said it was true. It was true. And then they did what Judge Hamilton pointed out, which is to say that it affects the taste of it. And we believe that we have supplemented the record in the trial court for the next time we're here with significant evidence of that. Both Coors Light and Miller Light both acknowledge that the corn syrup affects the taste. If it affects the taste, it's a proper subject for comparative advertising when it's true. In addition, there's a very large difference, and this is in the record now, but it's being developed even more, that there's a very large difference from buying in a tanker truck hydrolyzed by commercial enzymes corn syrup that's been transformed versus our tankers of rice that come in. One of the things I found oddest about the statements in the district court's opinion is that Anheuser-Busch's other beers also appear to be made with corn syrup. Are there any beers made with rice other than Bud Light? Budweiser is made with it, and then many beers are made with corn, real corn. Real corn. Yeah, corn grits they would call them. In fact, in our record we have a list of ingredients from Miller that runs 20-some pages, and what you'll see is there's a variety of sources that can be used. But we use rice, and we actually use corn in our value beers like Busch Light and Natural Light as well, but then we do use corn syrup. There's other rice-based beers as well. You can use also cane sugar in some products, which you see in the Miller course. They have a product called Cape Lime, which is very interesting to us because they advertise that they use cane sugar as their alcohol source, now saying that no consumer would possibly care where the alcohol comes from, so there are a variety of alcohol sources. But, Your Honor, if you wanted a comprehensive list of the types of things that are ingredients, they're at document 40-3, which is a listing of Miller Coors' ingredients. They tend to use corn syrup more than corn, but they do have a Yingling product, for example, that does use corn. That may be about as much as I care to learn. I've learned quite a bit myself. The bottom line is we have a nice discussion of the issue of how corn syrup is admitted to end up in the final product at 146 pages 24-27 of the district court's record. Now we come to the question that they let off with, which is, should you adopt a presumption? I have a few observations about that. The first would be that the Lanham Act was adopted in 1946. I think it's fair to say this is one of the most sophisticated and significant Lanham Act jurisdictions. It's never been adopted. In addition, as the Supreme Court decisions, such as eBay and Winter and others, discuss, presumptions are not ascendant. There's actually been a series of presumptions that have been eliminated in eBay, Winter, Lexington, on things like harm. But the third is that this presumption appears to want to be based on intent. I would suggest that that concept is not squarable with either Meat Johnson or really First Health. Because Meat Johnson looks at the language and did two things. The first is, said you don't do survey evidence if it's objectively verifiable or verifiably objectively true. And so there was an objective standard that was applied in Meat Johnson, meaning look at the words and are they true? And the third circuit, which has a great discussion of Meat Johnson, also in the Havana Club case, it's called Pernod. They have a really nice way of putting it as well, which is, would everybody have to agree, if you look at it, that it would be a true statement? And that type of standard, their language is, quote, reasonable people would have to acknowledge is not false or misleading. So what we have is Meat Johnson does an objective standard at the outset. But then, of course, there's the rehearing opinion, which we think is highly significant. The district court did too. Initially, there was an observation in the court that misunderstood is different than intended to deceive or designed to deceive. And on rehearing, that was the primary change in the opinion was to say misleading is not the same as misunderstood. And so we think that, in effect, the court in Meat Johnson has rejected the idea of a presumption based on subjective intent and that, therefore, it should not be adopted. But in no circumstance has this presumption been applied in a case where the trial court found, and clearly not clearly wrong, that the ads are true, that the ads are neutral, and that the ads, in addition, do not imply what the plaintiff's trying to say. I'm not sure I understand what you mean by saying the ads are neutral. Those ads were not exactly neutral between Anheuser-Busch's products and Miller Coors's products. I should be more precise. The ad is clearly fitting within the Arla Foods issue, is what we're talking about here. So Arla Foods was a case where what was said about the hormones in RBST milk was true. But what they did was they had a child reading words, and they had pictures of monsters with razor-sharp horns, and they called it weird stuff in it. What the ads did, as the district court found, which is not clearly wrong and we think completely correct, is that we did not, in our ads, have images or statements that suggested a health problem with corn syrup. We did not suggest a taste problem with corn syrup. In fact, if you watch the commercials, it's carefully done to not even have a bad expression when people are looking at it or anything like that. So when I say neutral, I think what I would say is no other messages that would be construed to be false or misleading. I think that's how the district court looked at it when the district court found that it was neutral. That's the sense in which he was using it. You've got your own marketing guy's description of the research that was done ahead of time. You've got, in essence, it seems to be one fair description of what we've got here is deliberate ambiguity exploited for purposes of exploiting consumers' own associations. You don't need to have monsters. You don't need to have language like weird stuff. You're taking advantage of what the consumer brings to the ad. The district court did not make such a finding. The district court said that there could be knowledge of an attitude out there and a hope, but there was certainly no finding of that language. But there is also unquestionably evidence of proper advertising going on in the same exact articles. The food and wine interview talks about it's a natural product. It's not cheap. It's more expensive. It takes longer to do. It's very good for us to talk about transparency. And so there is clearly evidence of a hope and a desire to do things that everyone would agree is correct. And then, of course, we now have evidence, in our view, clear evidence that corn syrup is, in fact, in the final product. And so there's nothing wrong with even intending that. But the ad did not speak to that. I think what's most significant is going down this intent-based presumption when this court has a workable, objective standard set out in Meet Johnson. I don't think it makes sense for the reasons that First Health identified and that Meet Johnson identified, which is it would prevent someone here in America with the First Amendment from saying something that is objectively true of interest to some consumers. And thereby, if you discourage that, you end up in a worse situation. Are you saying, then, that you don't think intent is relevant even? I don't think that intent is relevant to establishing the element of a Lanham Act violation on whether the ad is misleading or not under these facts and circumstances where it's objectively, verifiably true. So I agree with that completely. Now, could there be a willfulness issue later in the case where if Miller Coors wanted to say they are entitled to some extra damages or things like that? That could be the case. But in a case where you have findings that are clearly not clear air, and we think true, that it doesn't imply the message that Miller Coors is suggesting, that intent has no role in this particular element of it, which is whether this is misleading. In determining consumer deception. Exactly. So even if there was evidence that they wanted to deceive, they wanted to send the message that corn syrup was in the final product, if they had an abundance of evidence of that, that would not be relevant in your mind to the question of whether or not the consumers were actually deceived. That's correct under Meade-Johnson and certainly First Health. First Health even makes another observation that I think is particularly important. That was about the word PPO and whether it's directed or non-directed. But the court's opinion noted that the defendant was using the exact same words that the government was using. And here, of course, we're using the exact same words that the plaintiff used. I think that if you start getting into an intent-based approach to recast true words as misleading, I don't think that that's appropriate under that particular element of the Lanham Act. We're not saying that we're going to be filing a motion in limine if intent is an element of some other claim for additional damages or things like that. But here, at this stage of the case on this particular element, I don't think it has any role in it whatsoever. And, of course, when you look at those cases that apply a presumption, there's always a finding that the ad that's actually at issue has some false or impliedly false impression that's being left. And here, it's unique because the district court actually found both that it's literally true and that it doesn't imply anything about the final product. The ads have a barrel coming into the brewery as opposed to after the fact. They don't, as the district court pointed out, show it being added to it. So where you have an ad that is so carefully truthful in all respects, doesn't imply a message, a district court made those findings subject to clear air review, I don't think that an intent-based presumption can change the meaning of objective words. And so, under those cases, we think that we're right. And also note that our words, brew, use, and made with, do have objective meanings that are being used in the process. On this presumption, of course, it's adopted. What's the objective meaning of made with? You're familiar with the omelet example, right? Yes. Made with eggs, made with a cast iron skillet, and made with sweat and tears. Yeah. Well, we do a lot of work. What's the objective meaning of made with there? I think the objective meaning of made with would be exactly what the dictionary says, which is to produce a substance by combination of ingredient. That's straight out of the OED. There's no contrary definition. It is one definition. Dictionaries are not going to solve this problem. The problem with dictionaries is that the number of definitions of words is very high. Right? Truly, there it is, you made with a skillet. I suppose in terms of an ingredient discussion, which Miller Coors concedes is an ingredient, that when you talk about made with, it's not used in isolation. It's not talked about. Exactly. No word has an objective meaning all by itself. Words have meaning in their context. Here the context was made with corn syrup, which Miller Coors identifies as an ingredient. When you look at that definition, it talks about to produce a substance by a combination of ingredients. There's actually a definition that directly ties to how it was used here. We would say that made with is not deceptive. In fact, we, of course, also point out at docket 40-7 that Miller Light flat out says it was made with corn syrup without any sort of qualifications. Thank you, counsel. Thank you very much, Your Honors. Mr. Schott. Thank you, Your Honor. I appreciate the opportunity. I want to start by addressing the question that Judge St. Eve asked about evidence in the record with respect to this use of the word ingredient. Miller Coors started putting that information on its website sometime in 2014, so about four years before the Super Bowl. The evidence we had in the record is in the four years prior to the Super Bowl, we never got one complaint or consumer call showing confusion about whether there's corn syrup in the final product. Within a few hours after the Super Bowl, we had 180, 179 complaints where people believed that the message was that there's corn syrup in your beer. In addition, we had Professor Wynn do an analysis of the social media postings that occurred in the aftermath of the Super Bowl, and his conclusion was 28.6% of those messages showed some indication that people believed there was corn syrup in the beer, and so that was the evidence that was in the record. That's pages 16 and 18 of the trial court's decision. The last section I wanted to address quickly, and it very much relates, I think, to this last conversation that just occurred. The Meade-Johnson case did not overrule the longstanding precedent in this court and across the nation that even a literally true statement can be a violation of the Lanham Act, can be misleading because of context. That's exactly the point of all these cases. You have to look at the context. What was the context the statements were made? That's why this evidence that I've just referred to, I think, is important, because the information on our website in that context did not mislead people. How would intent be relevant to the context? It's possible that somebody could provide context that tends to mislead people unintentionally, but certainly if somebody was intending to design a commercial to say, look, we want to give people the impression that there's corn syrup in the beer, we don't want to say that directly because that would give us a problem. So how do we provide context to give people that impression, both within that commercial and within the campaign as a whole? Remember, this is a campaign that included, among other things, billboards that said, Bud Light, 100% less corn syrup than Miller Lite. So when you put all those things together, the context of this entire campaign, the context of the commercial, that's very different than the Meet Johnson case where there's a phrase on a label. There's no other context. It's not part of an ad. There's no brochures or print advertisement that go along with it. It's one phrase on a label. So that's one distinction of Meet Johnson. Another distinction, which I don't have time in nine seconds to get into, is the survey in Meet Johnson was just very different than this comparative survey that tried to measure confusion between people that saw the controlled version and the actual ad. Thank you very much. Thank you, counsel. The case, well, let's step back. The court gives both parties 14 days to file supplemental briefs addressing the question whether the district court has complied with Rule 65D, whether this court has appellate jurisdiction, and whether the district court had jurisdiction to make the later changes to the injunction that are now the subject of Anheuser-Busch's separate appeals. Fourteen days to address those, and you heard from all three of us some issues that you will want to cover in filing those separate memorandums. Thank you, Your Honor. Once that's been done, the case will be taken under advisement. And it is, of course, our hope that in the process of this, you may ask the district court to get a proper injunction filed. Okay? Thank you very much.